NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

16-P-1299                                        Appeals Court

COMMONWEALTH vs. ROBERTO CRUZ.

No. 16-P-1299.

Essex.        November 8, 2017. - April 13, 2018.

Present:  Milkey, Blake, & Singh, JJ.

Indecent Assault and Battery. Practice, Criminal, Required
    finding.


Indictments found and returned in the Superior Court
Department on June 15, 2015.

The cases were tried before Richard E. Welch, III, J.


Daniel P. Tarlow for the defendant.
Marcia H. Slingerland, Assistant District Attorney, for the
Commonwealth.


SINGH, J.  Following a jury trial in the Superior Court,

the defendant was convicted of two counts of indecent assault

and battery on a child,[1] subsequent offense,[2] and sentenced to fifteen years to fifteen years and one day in State prison.[3]  On appeal, the defendant argues that there was insufficient evidence to support his convictions.  We agree and therefore reverse the judgments and set aside the verdicts.

Facts.  In the light most favorable to the Commonwealth, the jury could have found the following facts.  Jane (a pseudonym), a thirteen year old girl, was an intern at an aviation company in the summer of 2014.  While she was working one day, the defendant, an almost sixty year old man who she had met before at the airport, waved her over to him.  After a brief conversation, the defendant told her he would like to get her a gift for her upcoming birthday.  He said that he would like to give her a hug, but that they should do it in another room.  Jane went into a nearby hallway for a while, and waited, then

---

[1] The defendant was acquitted of a third count of indecent assault and battery on a child, subsequent offense, as well as one count of child enticement related to the same incident.  The Commonwealth nolle prossed one count of simple assault and battery before the case went to the jury.

[2] After jury trial on the underlying charges, the defendant pleaded guilty as to the subsequent offense portion of the indictments, acknowledging that he previously had been convicted of indecent assault and battery on a person fourteen years or older, more than twenty years prior.

[3] The subsequent offense portion of the indictments entailed a minimum mandatory sentence of fifteen years imprisonment.  See G. L. c. 265, § 13¾.

returned to work after a couple of minutes.  When she later saw him again in the airplane hangar, she asked if the defendant still wanted the hug,[4] and he hugged her briefly around the shoulders.

The defendant then asked if Jane wanted another hug, and said that they should go into another room.  He led her to a separate room, with no one else present.  He gave her a second hug, a little tighter, with a kiss on the neck.  This was not "anything that necessarily alarmed [her]" because she believed it was consistent with the way people of "European descent" greeted each other.[5]

The defendant then gave Jane a third hug without her permission, which was lower down, on her waist and hips.  He held her "very tight . . . like a hug [she] would receive from [her] parents."  At this point, she felt "a little bit alarmed" and thought the defendant's behavior was "kind of odd."[6]

---

[4] Jane testified that she was an honors student, and that she had Asperger's Syndrome, which did not affect her ability to understand everyday events, but sometimes made it difficult for her to "deal with social nuances."

[5] This incident was the basis for the indictment charging subsequent offense indecent assault and battery on a child, "to wit:  mouth on neck."  The jury acquitted the defendant of this count.

[6] This incident was the basis for the jury's guilty verdict on the indictment charging subsequent offense indecent assault and battery on a child, "to wit:  hug."

The defendant then stepped back with one hand grabbing her polo shirt at her right hip, "lifting it slightly," but not exposing or touching any of her skin. He also grabbed Jane's hand. After starting to lift the shirt, he paused, and put it down. He then asked her to turn around, and she did, becoming increasingly concerned. The defendant then told her she was very tall, and walked out of the room.[7]

Discussion. At the close of the Commonwealth's case, the defendant moved for required findings of not guilty, which was denied. The defendant argues that the judge erred because there was insufficient evidence to establish that the assaults in question were indecent. In reviewing the motion's denial, we examine "whether the Commonwealth produced enough evidence, taken in the light most favorable to the Commonwealth, to satisfy any rational trier of fact beyond a reasonable doubt that each element of the crime was present." Commonwealth v. Hilton, 398 Mass. 63, 64 (1986). See Commonwealth v. Latimore, 378 Mass. 671, 676-678 (1979). No essential element of the crime may be left to a jury's conjecture, surmise, or guesswork. Commonwealth v. Kelley, 359 Mass. 77, 88 (1971).

---

[7] This incident was the basis for the jury's guilty verdict on the indictment charging subsequent offense indecent assault and battery on a child, "to wit: hand on waist."

To sustain a conviction for indecent assault and battery on a child, the Commonwealth must prove, beyond a reasonable doubt, that (1) the child was not yet fourteen years old at the time of the offense, (2) the defendant intentionally touched the child without legal justification or excuse, and (3) the touching was indecent. See G. L. c. 265, § 13B. See also Instruction 6.500 of the Criminal Model Jury Instructions for Use in the District Court (3d ed. 2009). There is no issue on appeal as to the sufficiency of the evidence on the first two elements. There is also no real dispute as to the facts as they could be found, in the light most favorable to the Commonwealth. The question is whether, on those facts, the evidence was sufficient to establish that the defendant's touching of Jane was "indecent."

We have "held that the intentional, unjustified touching of private areas such as 'the breasts, abdomen, buttocks, thighs, and pubic area of a female'" is indecent pursuant to the statute. Commonwealth v. Mosby, 30 Mass. App. Ct. 181, 184-185 (1991), quoting from Commonwealth v. De La Cruz, 15 Mass. App. Ct. 52, 59 (1982). These areas have been "classified as sexual parts of the body." Commonwealth v. Rosa, 62 Mass. App. Ct. 622, 625 (2004). The list is not exhaustive, however, and "a touching need not be confined to these listed areas of the body to be deemed indecent." Commonwealth v. Miozza, 67 Mass. App. Ct. 567, 571 (2006). Indeed, in addition to the listed areas,

the mouth and its interior have been held to be intimate parts of the body, in certain circumstances. See Commonwealth v. Mamay, 407 Mass. 412, 418 (1990) (doctor's tongue inserted into patient's mouth); Commonwealth v. Castillo, 55 Mass. App. Ct. 563, 566-567 (2002) (defendant forced his tongue into mouth of his stepdaughter's fourteen year old girl friend).

There is no allegation here that the defendant had any physical contact with Jane involving any of the body parts that previously have been held to be intimate. We recognize that, in certain circumstances, "the touching of other intimate parts . . . may violate contemporary views of personal integrity and privacy." Commonwealth v. Vazquez, 65 Mass. App. Ct. 305, 307 (2005). "[I]ntimacy, as regards parts of the body, must be viewed within the context in which the contact takes place." Commonwealth v. Rosa, 62 Mass. App. Ct. at 625, quoting from People v. Rivera, 525 N.Y.S.2d 118, 119 (N.Y. Sup. Ct. 1988).

"When evaluating evidence of alleged indecent behavior, we consider all of the circumstances." Commonwealth v. Castillo, 55 Mass. App. Ct. at 566. Our caselaw has established that an indecent touching is one that is "fundamentally offensive to contemporary moral values," Commonwealth v. Mosby, 30 Mass. App. Ct. at 184 (quotation omitted), and that "society would regard as immodest and improper because of its sexual overtones." Commonwealth v. Ortiz, 47 Mass. App. Ct. 777, 779 (1999). The

test for indecency is objective, turning on the nature of the conduct rather than the defendant's intent.  See Commonwealth v. Lavigne, 42 Mass. App. Ct. 313, 314 (1997).

In the past we have looked to any disparity in age and sophistication between the parties to inform our understanding of the act in question.  See Commonwealth v. Castillo, 55 Mass. App. Ct. at 567.  Here the disparity between the almost sixty year old defendant and thirteen year old Jane was substantial. We have also looked to the existing relationship between the parties as well as any surreptitious behavior.  See ibid.  Here, the defendant was not well-known to Jane, and the defendant led her to a more private area.  With this context, the jury readily could have found, not only that the defendant's actions were inappropriate, but that he knew that they were so.  The narrow question before us is not whether the defendant's actions were wrong, but whether his conduct amounted to an indecent touching. Thus, context alone is not determinative and we must further examine the touchings alleged.

As to the hug, Jane described it as tight, like a hug that her parents would give her, tending to suggest that, though overly familiar, the contact itself was not sexual.  No suggestive comments, propositions, or gestures accompanied the hug, compare Commonwealth v. Rosa, 62 Mass. App. Ct. at 624 (defendant stuck his thumb into mouth of eleven year old

neighbor girl and asked her if she knew how to suck on it, if she wanted to suck on it, if she wanted to make it wet), and there was no indication that the contact lasted for any noteworthy amount of time.  Compare Commonwealth v. Vazquez, 65 Mass. App. Ct. at 309 (uncle's open mouthed kiss on lips of twelve year old niece lasted longer than familiar peck on cheek).  Certainly, contact taking place during a hug may constitute indecency.  See, e.g. Commonwealth v. Holman, 51 Mass. App. Ct. 786, 792-793 (2001) (defendant rubbed buttocks of his girl friend's twelve year old daughter while hugging her).  Here, however, there were no such additional circumstances present.

Considering the incident in the context of its attendant circumstances and in the light most favorable to the Commonwealth, we conclude that there was insufficient evidence to establish that the hug intruded upon a private or intimate area of the body so as to be considered "indecent" within the meaning of the criminal statute.

As to the defendant grabbing Jane's shirt at the hip and lifting it, here too the Commonwealth's evidence was insufficient to establish indecency.  We have held previously that, in certain circumstances, removing a person's clothes may constitute indecent assault and battery.  See Commonwealth v. Kopsala, 58 Mass. App. Ct. 387, 393 (2003) (upholding conviction

for indecent assault and battery where defendant "pulled up the victim's shirt, exposing her breasts, unbuttoned her jeans and pulled them off, and removed her panties"). See also A.P. v. M.T., 92 Mass. App. Ct. 156, 164 (2017) (in certain circumstances, removing dress and underwear of four year old child could constitute indecent assault and battery).

In contrast to the conduct in those cases, however, the defendant's slight lifting of Jane's shirt at her hip resulted in no exposure of any part of her body, let alone any intimate part. Again, we conclude that the evidence was insufficient to establish that the defendant's conduct intruded upon a private or intimate area of the body so as to be considered "indecent" within the meaning of the criminal statute.

In holding that the evidence was insufficient in this case, we note that analysis of the evidence of alleged indecent contact is highly fact-specific. While the defendant's general conduct toward Jane may well have crossed acceptable norms of appropriate behavior, we cannot say that the touchings themselves, even in context, were indecent for purposes of a criminal conviction for indecent assault and battery under G. L. c. 265, § 13B. For the reasons stated above, the judgments are

reversed and the verdicts are set aside.[8]  Judgment shall enter for the defendant.

Judgment reversed.

Verdict set aside.

Judgment for the defendant.

---

[8] While the defendant's behavior toward Jane may have constituted the criminal offense of assault and battery, in the sense of an intentional, but unconsented to, touching, simple assault and battery is not a lesser included offense of indecent assault and battery on a child, because lack of consent is not an element of the latter charge.  See Commonwealth v. Farrell, 31 Mass. App. Ct. 267, 268-269 (1991).

MILKEY, J. (concurring).  Jane (a pseudonym) testified that the defendant gave her a close hug "like [she] would receive from [her] parents."  She also testified that, as he was pulling away from the hug, the defendant lifted the bottom of her polo shirt "slightly," without touching or exposing any skin.  Based on such conduct, the defendant was convicted of two counts of indecent assault and battery on a person under the age of fourteen, G. L. c. 265, § 13B, and sentenced to fifteen years in State prison.  I agree with the majority's conclusion that, as a matter of law, the defendant's conduct -- while improper -- did not rise to the level of an "indecent" assault and battery.  Ante at        .  I also agree that none of the existing cases has held that conduct of this nature could be considered indecent.  Nevertheless, our cases include some expansive pronouncements that lend support to the Commonwealth's position, and thereby provide encouragement to the type of prosecution here.  I write separately to express my view that the case before us presents an appropriate opportunity to revisit such language.

The narrow question we face is not whether the defendant's conduct was improper or even illegal.  Instead, it is whether the Legislature intended that such conduct amounted to an "indecent" assault and battery of a child, an offense the Legislature considered so heinous that it merits severe

mandatory sanctions.[1]  Thus, the case goes to the heart of what it means for a touching to be indecent.

As the majority well explains, an intentional, unjustified touching of certain enumerated body parts -- such as genitalia, buttocks, and female breasts -- is deemed indecent under the statute.  See, e.g., Commonwealth v. Mosby, 30 Mass. App. Ct. 181, 184 (1991).  Cases involving the touching of such off-limits areas therefore generally are straightforward.[2]  Difficulties arise where, as here, there has been no contact with any of those areas, but the defendant nevertheless has touched the person in a manner that could be considered

---

[1] Subject to limited constitutional review -- not here presented -- it is, of course, up to the Legislature to set whatever minimum mandatory sentences it deems warranted.  The question before us therefore is one of legislative intent: whether the Legislature intended to include conduct of the sort at issue here within the scope of the offenses that would be treated as harshly as the indecent assault and battery statute does.  As the trial judge himself observed in imposing a minimum mandatory fifteen-year sentence, that punishment was "completely disproportionate to the crime here," and "the same prison sentence . . . would be imposed upon someone who committed murder in the second degree."  That the defendant might not have received any greater punishment for killing Jane than for hugging her begs the question whether the Legislature intended to include the latter within the scope of offenses that would be subject to such sanctions.

[2] That said, the list itself may be over-inclusive.  For example, the list includes the "abdomen," see Commonwealth v. Mosby, supra at 184, even though it is not immediately apparent how the touching of a person's abdomen necessarily would be considered sexual in nature.

improper.  Our cases hold that such a touching still could be found to have been "indecent," and they set forth a number of general guiding principles to assist in resolving that issue. In this manner, we have pronounced that a touching can be indecent if it violates "contemporary views of personal integrity and privacy,"[3] if it is "fundamentally offensive to contemporary moral values,"[4] or if it is "immodest and improper because of its sexual overtones."[5]

If the just-quoted principles are indeed what is supposed to guide the fact finder, then we should be affirming the conviction before us.  Here, a man who was almost sixty years old brought a thirteen year old girl he had only recently met to a back room where he improperly gave her a close hug and briefly started to lift the bottom of her shirt.  To state what I believe is obvious, jurors readily could consider such conduct as flouting contemporary societal norms, as violating the victim's "personal integrity and privacy," and as having "sexual overtones."[6]  Accordingly, if we are to hold -- as I agree we

---

[3] Commonwealth v. Vazquez, 65 Mass. App. Ct. 305, 307 (2005).

[4] Commonwealth v. Mosby, supra at 184, quoting from Commonwealth v. Perretti, 20 Mass. App. Ct. 36, 43 (1985).

[5] Commonwealth v. Ortiz, 47 Mass. App. Ct. 777, 779 (1999).

[6] Especially since other explanations for the defendant's actions are not apparent, the jury could have concluded that the

should -- that the defendant's conduct was not "indecent," then it must be because our prior pronouncements are too expansive as to how they define that term.

To be sure, the term "indecent" emits of a broad range of definitions, some of which support the Commonwealth's position. For example, one commonly used dictionary sets a bar that is markedly low and indefinite for what it means for something to be "indecent."  See American Heritage Dictionary of the English Language 891 (5th ed. 2016) (defining "indecent" to mean "[o]ffensive to accepted standards of decency or modesty; lewd or vulgar . . . [n]ot appropriate or becoming; unseemly").  But under the rule of lenity, ambiguity in the meaning of a statutory term must be resolved in favor of a defendant.  See Commonwealth v. Williamson, 462 Mass. 676, 679 (2012), quoting from Commonwealth v. Roucoulet, 413 Mass. 647, 652 (1992) ("[W]hen a criminal statute can 'plausibly be found to be

---

defendant's actions were driven by sexual urges.  This alone likely would be enough to create "sexual overtones" in the mind of the jurors.  If the standard is one of mere "sexual overtones," proper jury instructions about ignoring a defendant's intent are unlikely to cure the problem.  See Commonwealth v. Sullivan, 82 Mass. App. Ct. 293, 327 n.37 (2012) (Milkey, J., dissenting) ("In the context of [a child pornography] case . . . an instruction [that the jury are not to consider whether the defendant found the photograph lewd] has as realistic a chance of successfully getting the jury to put the defendant's thoughts out of their minds as would a plea to 'stop thinking about the elephant in the room'").

ambiguous,' the rule of lenity applies, and we 'give the defendant the benefit of the ambiguity'"). Indeed, the interpretation proffered by the Commonwealth -- in my view -- rests on notions of impropriety so vague as to raise due process concerns. A more narrow interpretation is necessary to avoid those concerns. See Commonwealth v. Kenney, 449 Mass. 840, 850 (2007), quoting from Commonwealth v. Orlando, 371 Mass. 732, 734 (1977) ("It is well established that due process requires criminal statutes that are not 'sufficiently explicit to give clear warning as to proscribed activities' to be declared unconstitutional"). See also Commonwealth v. Carpenter, 325 Mass. 519, 521 (1950) ("The vice of the ordinance [prohibiting 'sauntering or loitering' in a street] lies in its failure to prescribe any standard capable of intelligent human evaluation to enable one chargeable with its violation to discover those conditions which convert conduct which is prima facie lawful into that which is criminal"), and cases cited. Put simply, courts have a responsibility to make explicit where the boundaries of illegality are drawn. The role of a jury should be to decide whether a defendant has committed the offense charged, not to resolve what that crime is.[7]

---

[7] I recognize that courts have not always adopted this view in cases dealing with human sexuality. In fact, examples abound of cases in which -- in defining sex offenses -- judges have tolerated levels of vagueness and ambiguity that would be deemed

How then should courts draw the line between an ordinary assault and battery and an indecent one in cases that do not involve the touching of one of the forbidden body parts?  In my view, mere sexual "overtones" are not enough.  Instead, the contact should be required to be overtly sexual based on objective standards.[8]  In other words, for a touching to be indecent, it would have to involve a level of physical invasiveness comparable to the touching of one of the forbidden body parts.[9]  A hug like a parent would give and the "slight[]" lifting of the bottom of Jane's shirt do not meet that standard.

---

unacceptable in other contexts.  See, e.g., Jacobellis v. Ohio, 378 U.S. 184, 197 (1964) (Stewart, J., concurring) (where Justice Stewart famously declaimed, with regard to trying to define obscenity, "I know it when I see it").  See also United States v. Frabizio, 459 F.3d 80, 85-86 & n.9 (1st Cir. 2006) (declining to define "lasciviousness" for jury in child pornography case, because term "needs no adornment" and because defining term risked removing some conduct from intended scope of statute); Commonwealth v. Sullivan, supra at 294, 302 (upholding child pornography conviction based on possession of single photograph of naked child playing on beach even though nakedness alone could not make photograph "lewd" and jury had been given little objective direction as to what more was needed).  Providing juries objective guidance on what it means for a touching to be indecent is especially important given that the subject area of human sexuality tends to evoke such strong emotional responses.

[8] Applying such a standard would not have changed the result of the past reported cases.  For example, a doctor's inserting his tongue into his patient's mouth would still constitute an indecent assault and battery.  See Commonwealth v. Mamay, 407 Mass. 412, 418 (1990).

[9] Compare Commonwealth v. Sullivan, supra at 320 (Milkey, J., dissenting) ("A visual image of a naked child cannot be

Notably, adhering to such a standard would not have left the Commonwealth without a remedy here.  Had the Commonwealth wanted to, it plainly could have prosecuted the unwanted hug and the slight lifting of the bottom of Jane's shirt as simple assault and batteries.  Moreover, the Commonwealth could have asked the judge to take the particular nature of these touchings into account as a factor to be considered during sentencing.[10]  The fact that the Commonwealth did not pursue that sensible course of action is due in part to the undue breadth of our prior pronouncements.

---

considered a 'lewd exhibition' unless it presents the child in an overtly 'sexualized' manner that is tantamount to sexual abuse or exploitation of the child").

[10] In this regard, I note that at sentencing, Jane's mother gave an eloquent statement about the impact of the defendant's actions on her daughter.  It is apparent from the transcript that the judge was moved by this statement, and he observed that he still would have imposed a prison sentence if one had not been required, even though he believed the "touchings here[] are certainly not worthy of [the] Draconian sentence [required by the statute]."